UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ROBERT T. BARFIELD,
        Plaintiff,

v.                                                          CASE NO. 3:14-cv-914(VAB)

LYNN MILLING, ET. AL.,
        Defendants.

## INITIAL REVIEW ORDER

The plaintiff, Robert T. Barfield, who at the time he filed this complaint *pro se* was incarcerated at Cheshire Correctional Institution, alleges under 42 U.S.C. § 1983 that he was inappropriately housed in Administrative Segregation, in violation of his due process rights under the Fourteenth Amendment, and that he was denied his constitutional right to access the courts. Compl. 8-A, ECF No. 1. He also "alleges torts of negligence for failure to properly train and supervise" under state law. *Id.* Plaintiff pleads that he has exhausted his administrative remedies for all claims. *Id.* at 8-C.

The defendants named in the Complaint are Lynn Milling, who is the Director of Classification and Population Management and the Director of the Interstate Compact Office for the State of Connecticut Department of Correction; James Dzurenda, who is the Deputy Commissioner of Facility Operations for the State of Connecticut Department of Correction; Jacqueline Bachan, who is a Correctional Supervisor at Northern Correctional Institution ("Northern"); "Counselor Supervisor" Griggs, who is a Counselor Supervisor at Walker-MacDougall Correctional Institution ("Walker-MacDougall"); McCormack, who is a Correctional Treatment Officer at Northern; O'Neill, who is a Correctional Counselor at Walker-MacDougall; Paula G. Miller, who is a Deputy Director of Offender Management at

1

the Nevada Department of Corrections in Carson City, Nevada and Sidney T. Schulman & Associates, a law office in Connecticut.

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." This requirement applies both where the inmate has paid the filing fee and where he is proceeding *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to liberally construe a *pro se* complaint, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), the complaint must include sufficient factual allegations to meet the *Twombly* and *Iqbal* standard of facial plausibility.

Mr. Barfield alleges that on August 7, 2012, he arrived at Walker-MacDougall from

the Nevada Department of Corrections pursuant to an agreement between Connecticut and Nevada, the Interstate Corrections Compact.  Compl. 8-A, ECF No. 1.  On August 22, 2012, an Interstate Corrections Compact representative of the Connecticut Department of Correction informed the plaintiff that he would be transferred to Northern.  *Id.*  Upon his arrival at Northern, prison officials placed the plaintiff in "Administrative Detention."  *Id.*

On September 4, 2012, he received a Notice indicating that Director Milling was considering placing him in Administrative Segregation and that an Administrative Segregation hearing would be conducted soon.  *Id.*  The Notice indicated that the Connecticut Department of Correction had identified him as a disruptive inmate and that the Nevada and Iowa Departments of Correction indicated that he was housed in Administrative Segregation when he was in their custody.  *Id.*  Prison officials assigned the plaintiff an advocate for the upcoming hearing, Correctional Supervisor Bachan.  *Id.* at 8-B.

On September 6, 2012, Counselor Supervisor Griggs, Correctional Treatment Officer McCormack and Correctional Counselor O'Neill held an Administrative Segregation hearing.  *Id.*  Mr. Barfield appeared at the hearing and presented a statement and other evidence.  *Id.*  Defendants Griggs, McCormack and O'Neill allegedly ignored the evidence and recommended to Director Milling that Mr. Barfield be placed in Administrative Segregation.  *Id.*  On September 14, 2012, Mr. Barfield received a Notification of Decision indicating that this recommendation was accepted and he would be placed into "the Administrative Segregation program."  *Id.*

Mr. Barfield  appealed the decision to Commissioner Leo Arnone and Deputy Commissioner James Dzurenda.  *Id.*  On October 15, 2012, defendant Dzurenda upheld the decision to place the plaintiff in Administrative Segregation.  *Id.*  The plaintiff also wrote

to Deputy Director Paula G. Miller at the Nevada Department of Corrections and informed her of his placement in Administrative Segregation, and she failed to take any action. *Id.*

Mr. Barfield also alleges that, while housed at Northern, he did not have access to a legal resource library and that the facility relies on the law offices of Schulman & Associates in Hartford, Connecticut to provide inmates with legal research materials. *Id.* at 8-B-8-C. In September 2012, the plaintiff contacted Schulman & Associates and asked for certain research materials and legal assistance to enable him to pursue an action in state court. *Id.* at 8-C. Unidentified staff at Schulman & Associates denied the plaintiff's requests for legal research materials because the request was "too voluminous [and] overly broad." *Id.* The staff members suggested that the plaintiff make a more specific and reasonable request. *Id.*

Mr. Barfield claims that when he submitted further requests for assistance to Schulman & Associates, un-named individuals at the firm informed him that they could not assist him unless the allegations in his complaint constituted a prima facie case. *Id.* They also asked Mr. Barfield to provide them with documentation to support his assertions. *Id.* On October 11, 2012, he filed a grievance about his difficulties with Schulman & Associates, which was denied. *Id.*

I.  **Procedural Due Process Claim**

Mr. Barfield alleges that the defendants violated his procedural due process rights by placing him in Administrative Segregation. In *Hewitt v. Helms*, the Supreme Court held that an inmate placed in administrative confinement is entitled to "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation" in an informal, non-

4

adversary proceeding held "within a reasonable time following his transfer" to administrative confinement.  459 U.S. 460, 476 (1983), *receded from on other grounds by Sandin v. Conner*, 515 U.S. 472, 479-84 (1995).  Mr. Barfield has alleged that the defendants provided him with notice of the charges or reasons for placing him in administrative segregation as well as a hearing and a chance to present evidence.  He also received notice of the decision to place him in administrative segregation because he was considered to be a threat to the security of correctional facilities and staff within Connecticut.  Thus, Mr. Barfield has not alleged that the defendants denied him procedural protections set forth in *Hewitt*.

Mr. Barfield claims that the evidence relied on by the defendants to place him in Administrative Segregation was insufficient because it pertained to his conduct at other facilities.  Compl. 8-A-8-B, ECF No. 1.  Due process requires that the decision of the hearing officer be supported by "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985); *Manley v. Bronson*, 657 F. Supp. 832, 839 (D. Conn. 1987).  The determination of whether the standard of "some evidence" has been met, "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

Administrative Segregation is defined as "placement of an inmate on a restrictive housing status . . . [because] the inmate['s] [ ] behavior or management factors pose a threat to the security of the facility or a risk to the safety of staff or other inmates and . . .

the inmate can no longer be safely managed in general population." State of Connecticut Department of Correction, Administrative Directive 9.4(3)(B).[1] Directive 9.4 (9) indicates that the Unit Administrator may order an inmate's placement in Administrative Segregation by completing CN 9401 ("Restrictive Housing Unit Status Order") and "stating specific reasons for placement." *Id.* 9.4(9)(A). Mr. Barfield states that the Classification Director agreed to his placement in Administrative Segregation based on evidence of his involvement in disruptive incidents that occurred at other facilities prior to his transfer to Connecticut. He does not deny that the incidents at the other facilities occurred. Administrative Directive 9.4 does not restrict the evidence to be considered when determining if an inmate should be placed on Administrative Segregation. Director of Classification Milling determined that the plaintiff's involvement in incidents that occurred in other facilities constituted a potential threat to the security of the facilities and other inmates in Connecticut. Thus, some evidence supported Director Milling's decision. Therefore, Mr. Barfield has failed to state a claim of a violation of his procedural due process rights in connection with his placement in Administrative Segregation in September 2012. The claim is dismissed per 28 U.S.C. § 1915A(b)(1).

## II.   Access to Courts Claim

Mr. Barfield asserts that defendant Schulman & Associates denied him access to

---

[1] "The Administrative Directives are written guidelines, promulgated pursuant to Connecticut General Statutes § 18-81, that establish the parameters of operation for Connecticut correctional facilities." *Nicholson v. Murphy*, No. 3:02-cv-1815 (MRK), 2003 WL 22909876, at *7, n.2 (D. Conn. Sept. 19, 2003) (citation omitted) (taking judicial notice of Connecticut Administrative Directive 9.6). The Court can take judicial notice of the State of Connecticut Administrative Directives that are found on the Department of Correction's website at: http://www.ct.gov/doc/taxonomy/ct_taxonomy.asp?DLN=40573. *Id; see also Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (holding it was proper for trial court to take judicial notice of state prison regulations).

courts by refusing his requests for legal research and materials.  In order to state a claim for relief under Section 1983 of the Civil Rights Act, the plaintiff must allege facts demonstrating that defendant acted under color of state law and that he has been deprived of a constitutionally or federally protected right.  See *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982); *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986).  In *Lugar*, the Supreme Court held that conduct constitutes state action when a deprivation of rights is "caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible," and "the party charged with the deprivation [is] a person who may fairly be said to be a state actor."  *Id.* at 937.

A public employee generally acts under color of state law when he or she acts in his or her official capacity or exercises his or her responsibilities pursuant to state law.  See *West v. Atkins*, 487 U.S. 42, 50 (1988).  In *Polk County v. Dodson*, 454 U.S. 312 (1981), the Supreme Court recognized an exception to this general rule.  "[A] public defender does not act under color of state law when performing the traditional functions of counsel to a criminal defendant."  *Id.* at 317; s*ee also Housand v. Heiman*, 594 F.2d 923, 924-25 (2d Cir. 1979).  The Court distinguished a public defender from the typical state employee or state actor and noted that "[w]hile performing his duties, the public defender retains all of the essential attributes of a private attorney, including, most importantly, his professional independence, which the State is constitutionally obliged to respect."  *West*, 487 U.S. at 50 (internal quotation marks omitted) (citing *Polk County*, 454 U.S. at 321-22).  In addition, "when representing an indigent defendant in a state criminal proceeding, the public defender does not act under color of state law for the purposes of § 1983 because he 'is

not acting on behalf of the State; he is the State's adversary.'" *Id.* (quoting *Polk County*, 454 U.S. at 323 n.13).

Similarly, attorneys appointed to represent indigent litigants are not considered to be acting under color of state law. *See, e.g., Neustein v. Orbach*, 732 F. Supp. 333, 345-46 (E.D.N.Y. 1990) (finding that the Legal Aid Society, which was appointed counsel in a child custody dispute, was not liable under Section 1983 because its attorneys do not act under color of state law) (citing *Lefcourt v. Legal Aid Society*, 445 F.2d 1150, 1157 (2d Cir. 1971)); *see also O'Bradovich v. Vill. Of Tuchahoe,* 325 F. Supp. 2d 413, 419 (S.D.N.Y. 2004) ("Private attorneys and law firms . . . do not act under color or state authority."); *Srubar v. Rudd, Rosenberg, Mitofsky & Hollender*, 875 F. Supp. 155, 163 (S.D.N.Y. 1994) ("Law firms and lawyers are clearly not state entities for the purposes of a Section 1983 claim.") (internal quotation marks and citation omitted), *aff'd*, 71 F.3d 406 (2d Cir. 1995).

Schulman & Associates is a law firm in Hartford, Connecticut. Mr. Barfield has provided no facts to suggest that Schulman & Associates, a private law firm, acted under color of state law. He states that Schulman & Associates has contracted with the Department of Correction to provide assistance to Connecticut inmates in connection with legal matters. Compl. 8-B-8-C, ECF No. 1. The fact that the State of Connecticut may provide funding to Schulman & Associates to operate the Inmates' Legal Assistance Program ("ILAP") "is insufficient in and of itself to establish state action." *Szekeres v. Schaeffer*, 304 F. Sup. 2d 296, 307 (D. Conn. 2004) (citing *Rendell-Baker*, 457 U.S. 830, 840 (1982)). This Court has previously held that attorneys working for ILAP under contract with the State of Connecticut to provide legal assistance to inmates incarcerated in

Connecticut in civil matters against the Department of Correction are not state actors under Section 1983. *See McCarthy v. Armstrong, et al.*, No. 3:96-cv-517 (PCD) (HBF) (D. Conn. May 28, 1998) (ruling granting defendants' motion to dismiss civil rights complaint because Schulman, who had contracted with Connecticut through ILAP to provide legal assistance to inmates, was not acting under color of state law); *see also McArthur v. Bell*, 788 F. Supp. 706, 710 n.1 (E.D.N.Y. 1992) (noting that a private attorney is not considered a state actor for purposes of Section 1983) (citations omitted). Because Schulman & Associates was acting as a private law firm in performing obligations under its contract with the Department of Correction, the court concludes it was not acting under color of state law. Thus, Mr. Barfield has failed to state a claim upon which relief may granted against Schulman & Associates. *See* 28 U.S.C. § 1915A(b)(1).

Even if Schulman & Associates could be considered a state actor, Mr. Barfield has not alleged that the firm denied him access to courts. It is well settled that inmates have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977), *overruled in part on other grounds by Lewis v. Casey*, 518 U.S. 343, 350 (1996). To state a claim for denial of access to the courts, the plaintiff is required to demonstrate that the defendants acted deliberately and that he suffered an actual injury. *See Lewis*, 518 U.S. at 353. To establish an actual injury, plaintiff must allege facts showing that the defendant took or was responsible for actions that hindered his efforts to pursue a non-frivolous legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts. *See id.*; *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 2002).

Mr. Barfield generally asserts that he sought "research materials" and other assistance from Schulman & Associates about the State of Connecticut rules of civil procedure and tort law and the Interstate Corrections Compact statute. He does not assert that he was unable to pursue an action in state or federal court regarding conditions of confinement. In fact, Mr. Barfield filed an action in the Rockville Superior Court on April 4, 2014. *See Barfield v. Warden, State Prison*, Case No. TSR-CV14-4006137-S (filed Apr. 4, 2014).[2] In addition, this is the second civil rights action filed by him in this court. *See Barfield v. Mitchell, et al.*, Case No. 3:14-cv-317(JAM) (D. Conn. Mar. 12, 2014). Because Mr. Barfield has failed to allege that he suffered an actual injury as a result of the conduct of Schulman & Associates, his access to courts claim fails to meet the standard set forth in *Lewis*.

For all the reasons set forth above, the claims against defendant Schulman & Associates are dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

## ORDERS

The court enters the following orders:

(1)   All claims set forth in the Complaint [**ECF No. 1**] against the defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).   The Motion for Appointment of Counsel [**ECF No. 3**] is **DENIED** as moot.   The Court declines to exercise supplemental jurisdiction over any state law claims.   *See* 28 U.S.C. 1367(c)(3).

---

[2]  The Second Circuit has held that district courts may properly take judicial notice of docket sheets in other court cases. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (finding no error in district court's reliance on a docket sheet in another case because "docket sheets are public records of which the court could take judicial notice") (citation omitted). The docket sheet for this case may be accessed by

(2) The Clerk is directed to enter judgment for the defendants and close this case. If the plaintiff chooses to appeal this decision, he may not do so *in forma pauperis*, because such an appeal would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

SO ORDERED at Bridgeport, Connecticut this 16th day of April, 2015.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

entering the case number on the following website: http://civilinquiry.jud.ct.gov.